## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rexam Inc.,

        Plaintiff,

    v.

United Steel Workers of America,
AFL-CIO-CLC; International Association
of Machinists and Aerospace Workers;
United Steel Workers of America,
AFL-CIO-CLC, Local 0188S; and
Waldo W. Slagerman; Marlene A.
Rudolph; Steven J. Stolarski; Frank
Kieswether; Larry Alford; George A.
Kneifel; Gail J. Rearick; Dwayne L.
Wilson; and Lloyd W. Erickson,
Individually, and as Representatives of
Persons Similarly Situated,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Case No. 03-2998 ADM/AJB

---

James P. McLoughlin, Jr., Esq., Moore & Van Allen, Charlotte, NC, and Timothy E.
Branson, Esq., Dorsey & Whitney LLP, Minneapolis, MN appeared for and on behalf of
Plaintiff.

Sally M. Tedrow, Esq., O'Donoghue & O'Donoghue LLP, Washington DC, appeared for and on
behalf of Defendants.

---

## I. INTRODUCTION

On April 5, 2005, oral argument before the undersigned United States District Judge was

heard on Rexam, Inc.'s ("Rexam") Motion to Certify Class [Docket No. 76] and Contingent

Motion to Amend/Correct Amended Complaint [Docket No. 83]. Rexam's Motions are opposed

by Defendants International Association of Machinists ("IAM") and Lloyd W. Erickson

("Erickson").[1]  The remaining Defendants, United Steel Workers of America,

AFL-CIO-CLC and United Steel Workers of America, AFL-CIO-CLC, Local 0188S

(collectively, "USWA"), Waldo W. Slagerman ("Slagerman"), Marlene A. Rudolph

("Rudolph"), Steven J. Stolarski ("Stolarski"), Frank Kieswether ("Kieswether"), Larry Alford

("Alford"), George A. Kneifel ("Kneifel"), Gail J. Rearick ("Rearick"), and Dwayne L. Wilson

("Wilson") (collectively, "individual defendants") filed a joint motion with Rexam to Certify

Class ("Joint Mot. to Certify Class") [Docket No. 89].  The joint motion also advocates the

formation of seven sub-classes to facilitate effective management of the case.

## II.  BACKGROUND

For 50 years Rexam (including its predecessors American Can Company ("ACC"),

National Can Company ("NCC"), and American National Can Company ("ANC") have

employed USWA and IAM members at approximately 140 plants in 34 states.[2]  Reilly Aff. (Pl.'s

Mem. in Supp. of Mot. to Certify Class [Docket No. 78] Ex. 1) ¶ 5.  Since 1960, Rexam has

provided its former USWA and IAM employees retiree welfare benefits.  Schemm Dep. I (Pl.'s

Mem. in Supp. of Mot. to Certify Class Ex. 11) at 37-38; Schemm Dep. II (Pl.'s Mem. in Supp.

of Mot. to Certify Class Ex. 12) at 256-57; Pangborn Dep. (Pl.'s Mem. in Supp. of Mot. to

Certify Class Ex. 10) at 26-27, 74-75.  These benefits are the subject of the collective bargaining

agreements ("CBAs") negotiated with each union every three to five years.  From 1960 to 1987,

the NCC negotiated CBAs with IAM and USWA known as "Master Agreements" while the

---

[1]  Unless specifically noted otherwise, IAM will be used to denote both the Union and Erickson.
[2]  Rexam currently operates 17 manufacturing plants in 14 states.  Reilly Aff. ¶ 5.

agreements negotiated by ACC with the unions were referred to as "Basic Agreements."
Schemm Dep. II at 256-57.  Although the Master and Basic Agreements served as the CBAs for
most manufacturing plants, certain individual plants also negotiated separate and exclusive
CBAs known as "Independent Agreements."  Pangborn Dep. at 74-75.

In August 1987, NCC purchased the can packaging division of ACC and formed ANC.
Schemm Dep. I at 6-7, 25, 35, 68; Barratt Dep. at 36; Pangborn Dep. at 59.  ANC continued the
practice of negotiating separate CBAs every three to five years with both the USWA and the
IAM.  Schemm Dep. I at 68-69, 132; Barratt Dep. at 137-38.  In 1988, ANC was purchased by
Pechiney, a French aluminum products manager, although it continued to operate as ANC.
Schemm Dep. I at 26-30; Barratt Decl. at 6.  In July 2000, Rexam, through its subsidiary Rexam
Beverage Can Americas Inc. ("Rexam BCA"), purchased ANC from Pechiney.  Schemm Dep. I
at 31; Barratt Dep. at 136.  Rexam assumed responsibility for administering NCC retiree welfare
benefits, all IAM retiree welfare benefits, and the USWA retiree welfare benefits for all ACC
plans still operating as of the acquisition date.  Since 2000, Rexam has continued the practice of
negotiating separate CBAs every three to five years with both IAM and USWA.  Reilly Aff. ¶ 6.

Between 1961 and the present, retirees of Rexam and its assorted predecessors have
experienced numerous changes to their benefits plans.  Reilly Aff. ¶ 10.  The nature and scope of
the retiree benefits, as well as the terms and language used to define them, vary significantly
between the different CBAs and whether it is a Master, Basic or Independent Agreement.

Rexam seeks a declaratory judgment regarding its right, as the sponsor and fiduciary, to
modify the welfare benefits provided to persons formerly employed by its subsidiary, Rexam

BCA, and its predecessors.  In the instant motion, Rexam asks this Court to certify a class of

more than 3,500 persons:

> (1) who retired from Rexam or are a surviving spouse of a retiree or retirement-eligible
> employee; and
>
> (2) who, at the time of retirement, were represented by the USWA or IAM for collective
> bargaining; and
>
> (3) who, in the case of retirees are receiving benefits or are eligible to receive benefits,
> and in the case of the surviving spouses are receiving benefits, pursuant to retiree welfare
> benefit plans sponsored by Rexam.

Pl.'s Mem. in Supp. of Mot. for Class Certification at 14.  In effect, the two questions to be

addressed by the declaratory judgment are: (1) did the retirees' welfare benefits vest under their

respective CBAs and (2) if so, at what point?  Whether benefits vested depends on the language

of the individual CBA, particularly the myriad "insurance durational clauses," "benefits

coordination clauses" and "extent and limit of coverage clauses."  Id. at 9.   Rexam contends

certification as one large class is appropriate.  However, given the variations between CBA

terms, unions, and bargaining units, Rexam suggests the litigation would be more effectively

managed through the use of several subclasses.  Rexam and USWA stipulated to the following

seven subclasses:

> (1) NCC USWA Subclass (approximately 553 members) - retirees formerly represented
> by the USWA who retired from NCC between March 1, 1960 and August 31, 1987, and
> their surviving spouses currently receiving benefits.
>
> (2) ANC USWA (Former NCC Plants) Pre-583 Plan Subclass (approximately 614
> members) - retirees formerly represented by the USWA who worked at former NCC
> plants and retired from ANC after August 31, 1987 and before August 1, 1994, and their
> surviving spouses currently receiving benefits.
>
> (3) ACC USWA and ANC USWA (Former ACC Plants) Pre-583 Plan Subclass

(approximately 68 members) - retirees formerly represented by the USWA who retired from ACC between Janurary 1, 1960 and August 31, 1987, and their surviving spouses currently receiving benefits, and retirees formerly represented by the USWA who retired between September 1, 1987 and July 31, 1994 from ANC plants that were former ACC plants, and their surviving spouses currently receiving benefits.

(4) USWA 583 Plan Subclass (approximately 561 members) - retirees formerly represented by the USWA who retired from ANC and Rexam plants between August 1, 1994 and the present, and their surviving spouses currently receiving benefits.

(5) USWA Managed Care Election Subclass (approximately 161 members) - retirees formerly represented by the USWA who retired from ANC, ACC, or NCC before March 1, 1993 and who later elected to enter Rexam's Freedom of Choice Plan, and their surviving spouses currently receiving benefits.

(6) Whitehouse Plant Subclass (approximately 45 members) - an Independent Agreement retiree group comprised of retirees formerly represented by the USWA who retired from Rexam's Whitehouse, Ohio plant, and their surviving spouses currently receiving benefits.

(7) Valparaiso Plant Subclass (approximately 63 members) - an Independent Agreement retiree group comprised of retirees formerly represented by the USWA who retired from Rexam's Valparaiso, Indiana plant, and their surviving spouses currently receiving benefits.

Joint Motion for Class Certification at 3-4. Rexam also proposes the following four subclasses

should be used to determine whether the welfare benefits of IAM retirees vested:

(1) IAM Pre-583 Plan Subclass (approximately 1072 members) - retirees formerly represented by the IAM who retired from ANC or ACC between January 1, 1960 and July 31, 1994, and their surviving spouses currently receiving benefits.

(2) IAM 583 Plan Subclass (approximately 346 members) - retirees formerly represented by the IAM who retired from ANC and Rexam plants between August 1, 1994 and the present, and their surviving spouses currently receiving benefits.

(3) Washington & Gary Plants Subclass (approximately 40 members) - retirees formerly represented by the IAM who retired from Rexam's Vancouver, Washington and Gary, Indiana plants, and their surviving spouses currently receiving benefits and retirees represented by the IAM who retired from Rexam's Kent, Washington plant before July 31, 1994, and their surviving spouses currently receiving benefits.

5

(4) San Leandro & Modesto Plants Subclass (approximately 182 members) - an Independent Agreement retiree group comprised of retirees formerly represented by the IAM who retired from Rexam's San Leandro and Modesto plants, and their surviving spouses currently receiving benefits

Pl.'s Mem. of Law in Supp. of Mot. for Class Certification at 27-28.

With the exception of Erickson, all of the individual defendants are members of the proposed USWA subclasses. Amended Class Action Compl. ¶¶ 33, 37, 53. Erickson, a Minnesota resident, is a member of the proposed San Leandro & Modesto Plants Subclass. Defs.' Mem. of Law in Opp'n to Mot. for Class Certification at 14. In its Contingent Motion to Amend Complaint, Rexam seeks to add additional individual defendants so each proposed subclass would have a named representative. Rexam wishes to add Martha K. Yanosh, Gregory G. George, Delma V. Sisson and Donna M. Hogan to represent the USWA subclasses and Roy Gregory, Donald Schwenk and Alphonso Quiroga to represent the proposed IAM subclasses.[3] While USWA stipulated to the addition of these individual defendants, IAM opposes the motion.

## III. DISCUSSION

### A.    Class Certification

For class certification to be appropriate, plaintiff must first establish the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23(a). Class certification is proper when (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the

---

[3]  Of the proposed representatives for the IAM subclasses, only Schwenk resides in Minnesota. See Proposed Second Am. Class Compl. [Docket No. 83] ¶¶ 6-21.

class (adequacy).  Id.

Rexam argues that all 3,500 plus benefits-eligible former employees who, at the time of retirement, were represented by USWA or IAM for collective bargaining purposes, and are presently accepting or deferring their retiree welfare benefits from Rexam, or are benefits-eligible spouses of former employees presently accepting retiree welfare benefits from Rexam, constitute one class as defined by Rule 23(a).  As a result, Rexam argues subclasses are not necessary for certification but provide a useful management tool.

The Court will first consider whether this class is suitable for certification.  An analysis of each of Rule 23(a)'s four prerequisites is unnecessary, as the Court finds insufficient commonality exists to certify the class.

Rexam argues the proposed defendant class satisfies the Rule 23(a)(2) commonality requirement because the legal issues of whether the retiree welfare benefits vested, and, if so, when, is common to all its former employees and their dependents regardless of their controlling CBA, union affiliation, or manufacturing plant.  IAM contends the proposed class does not meet the commonality requirement because it requires interpretation of the terms of eleven different groups of CBAs and plans negotiated by different companies and separate unions at both the local and national levels.

"When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."  Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).  However, "[w]hen the resolution of a common legal issue is dependent upon factual determinations that will be

7

different for each purported class plaintiff, . . . courts have consistently refused to find

commonality and have declined to certify a class action." Liberty Lincoln Mercury Inc. v. Ford

Marketing Corp., 149 F.R.D. 65, 76 (D. N.J. 1993) (citing Werlein v. United States, 746 F. Supp.

887, 912 (D. Minn. 1990), vacated on other grounds, 793 F. Supp. 898 (D. Minn. 1992)).

        To determine whether the benefits of the retirees or their spouses have vested, the Court

must look to the terms of the respective plans and CBAs.  See, e.g., Jensen v. SIPCO, 38 F.3d

945, 949 (8th Cir. 1994).  If any of these plans or CBAs is ambiguous, extrinsic evidence, such

as bargaining history, extrinsic documents, and course of dealing, must be considered to

determine the meaning of the terms.  See id.; Anderson v. Alpha Portland Indus., Inc., 836 F.2d

1512, 1517 (8th Cir. 1988); Local Union No. 150-A, United Food and Comm. Workers v.

Dubuque Packing Co., 756 F.2d 66, 69 (8th Cir. 1985).

        In the instant case, Plaintiff admits eleven different groups of plans and CBAs control

whether the welfare benefits of more than 3,500 retirees and their surviving spouses vested.  In

addition, many of these plans were originally negotiated between several different companies

and two different unions.  Furthermore, the plans and CBAs vary by individual bargaining unit.

Although Rexam argues the proposed class shares the common legal question of whether, or at

what point, its welfare benefits vested, Rexam frames the question too broadly.  See Howe v.

Thompson, 896 F.2d 1107, 1111 (8th Cir. 1990) (finding certified class was too broad to serve as

the class for purposes of final judgment).  This is not a case where the issue stems from a

common right shared by all class members that happens to be articulated in separate contracts.

See Deboer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995).  Neither is it a case

where the disparities between class members are limited to ancillary factual circumstances or the degree of the harm.  Ultimately, the factfinder will need to make eleven different determinations as to whether the welfare benefits of retirees and their surviving spouses have vested.  Where the gravamen of a case calls for interpretation of contract terms that vary from one agreement to another, the case may be inappropriate for class certification.  See Sagers v. Yellow Freight System, Inc., 58 F.R.D. 54, 58 (N.D. Ga. 1972).

For the aforementioned reasons, it is clear that the individualized differences between the eleven different groups of plans and CBAs, the companies who negotiated them, the separate unions and the individual bargaining groups override any common factual or legal questions. See Smith v. LeBlanc, 2003 U.S. Dist. LEXIS 23478, *5 (D. Minn. Dec. 30, 2003); Sandles v. Ruben, 89 F.R.D. 635, 636-37 (S.D. Fla. 1981).  As a result, Rexam's motion requesting certification of the more than 3,500 benefits-eligible former employees who, at the time of retirement, were represented by USWA or IAM for collective bargaining purposes, and are presently accepting or deferring their retiree welfare benefits from Rexam, or are benefits-eligible spouses of former employees presently accepting retiree welfare benefits from Rexam, is denied.

**B.     Subclass Certification**

The next issue is whether the defects in the proposed class may be cured by subclasses. See In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106, 1129 (7th Cir. 1979) ("Division of a class or potential class into subclasses to account for differences in proof that may be required at trial is clearly permissible").  Although USWA and Rexam have

stipulated to the subclasses including USWA retirees, class stipulations are not complete

substitutes for the Court's analysis of whether, under Rule 23, certification is appropriate.

Hervey v. City of Little Rock, 787 F.2d 1223, 1227 (8th Cir. 1986); see Joint Mot. to Certify

Class.  Under Rule 23(c)(4)(B), courts may certify subclasses provided they each independently

meet the requirements of Rule 23 for the maintenance of a class action.  Fed. R. Civ. P.

23(c)(4)(B); Paxton v. Union Nat'l Bank of Little Rock, 688 F.2d 552, 559 (8th Cir. 1982).

Consequently, it is necessary that each of the subclasses meet the four prerequisites of Rule

23(a).

### 1. Rule 23(a) Requirements

### i.    Numerosity

Although "no arbitrary rules regarding the necessary size of classes have been

established," the class must be "so numerous that joinder of all members is impracticable."

Paxton, 688 F.2d at 559; Fed. R. Civ. P. 23(a)(1).  Courts may also evaluate "the size of the

individual claims, the inconvenience of trying individual suits, and any other factor relevant to

the practicability of joining all the putative class members."  Paxton, 688 F.2d at 559.  None of

the eleven proposed subclasses have less than 40 members, while the largest has 1,072 members.

See Pl.'s Mem. of Law in Supp. of Mot. for Class Certification at 25-28.  The Court is satisfied

that it would be impracticable to join 40 or more members for suit.  See, e.g., Horn v. Associated

Wholesale Grocers, Inc., 555 F.2d 270, 275-76 (10th Cir. 1977) (finding a class of 41-46

members sufficiently numerous); Ark. Educ. Ass'n v. Bd. of Educ., Portland Ark. Sch. Dist., 446

F.2d 763, 765-66 (8th Cir. 1971) (20 class members).  Consequently, each proposed subclass

meets the numerosity requirement.

### ii.    Commonality

The proposed subclasses do not suffer from the same defect as the overly broad class Rexam initially proposed.  The subclasses are delineated by CBA, plan, union and bargaining unit.  As a result, the members of each subclass share a common question of law and fact: under the terms of the CBA and the plan applicable to each subclass, did the welfare benefits of retirees or their surviving spouses vest and, if so, when?  As a result, each proposed subclass satisfies the commonality requirement.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  This requirement is satisfied "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." Lockwood Motors v. General Motors Corp., 162 F.R.D. 569, 575 (D. Minn. 1995).  "Thus a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Id.  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1174.  Since the typicality inquiry often merges with the commonality analysis, the Eighth Circuit has given typicality an "independent meaning" by holding that Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the [class representative]." Paxton, 688 F.2d at 562 (citation omitted).

The Court is satisfied that each of the proposed subclasses meets the typicality requirement.  All of the members of each subclass risk the loss or reduction of their welfare benefits.  Whether those benefits have vested will be determined based on the respective CBAs and plans of each subclass and any extrinsic evidence necessary to resolve any ambiguity in their terms.  Since these agreements result from collective bargaining, there should be no differences in the claims or defenses of individual members of the class.

### iv.      Adequacy

In analyzing Rule 23(a)(4), courts should consider both "whether the class representatives have common interests with the class members," and whether the named plaintiffs "will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63 (8th Cir. 1982).  Because the representatives in a class action must "possess the same interest and suffer the same injury" as their fellow class members, it is axiomatic that they must be members of the class they seek to represent.  Roby v. St. Louis Southwestern Ry Co., 775 F.2d 959, 961 (8th Cir. 1985) (citations omitted).  Furthermore, nothing in Rule 23 alters the jurisdictional requirement that the court must have in personam jurisdiction over the named individual representative of the class.  Calagaz v. Calhoon, 309 F.2d 248, 253 (5th Cir. 1962).

### a.      IAM Subclasses

Lloyd Erickson is the only IAM retiree named in the Amended Class Action Complaint for Declaratory Judgment.  See Am. Compl. ¶¶ 33, 37, 53.  Before cancer forced him to retire, Erickson worked at the San Leandro plant for 33 years.  Erickson Dep. [Docket No. 114] at 9,

13.  Erickson was a member of IAM and briefly served as a substitute for a union steward who was having health problems.  Id. at 9.  Erickson currently receives welfare benefits from Rexam. Id. at 15-17.  The parties contest whether Erickson is an adequate representative for the San Leandro and Modesto Plants Subclass.

Although the standard for adequately representing a class is not high, after reviewing Erickson's deposition, the Court finds Erickson does not qualify as an adequate representative for the San Leandro and Modesto Plants Subclass.  Erickson is a 71 year old man with serious health concerns who appears to have been named by Rexam primarily because he is one of two Rexam retirees who were IAM members and currently reside in Minnesota. Id. at 7.  He did not play a significant role in IAM leadership while at the San Leandro plant and no longer keeps in touch with any former employees.  Id. at 9, 24.  Erickson has not been in the San Leandro area for eleven years and never worked at the Modesto plant.  Id. at 34-35, 51, 58.  He requires regular care for his illnesses.  Id. at 18-20, 39-42, 46.  He has trouble concentrating and remembering routine details.  Id. at 4-6, 19, 22.  His knowledge of the instant lawsuit is limited to an understanding that Rexam is attempting to reduce his retiree benefits.  Id. at 51-52. Erickson lives at a driving distance of approximately eight hours from Minneapolis, although the trip generally takes him much longer.  Id. at 52  While he still drives, he admits he has difficulty, gets confused and must drive very slowly once he goes on the highway or encounters traffic.  Id. at 52-54.  As a result, Erickson has been unable to travel to the Twin Cities area to be with his two brothers on holidays.  Id. at 54-55.  Though Erickson gamely responded that he was willing to serve as a class representative, his participation seems less than voluntary.  Id. at 51-52.  For

these reasons, the Court is convinced Erickson is not an adequate subclass representative.

No other IAM retiree is currently named as an individual defendant and could serve as a representative for each of the four IAM retiree subclasses.  To rectify this shortcoming, Rexam filed a Contingent Motion to Amend Complaint.  In its Motion, Rexam requests leave to add as named defendants three additional IAM employees, Roy V. Gregory ("Gregory"), Donald R. Schwenk ("Schwenk") and Alphonso Quiroga ("Quiroga"), who will serve as representatives for the following subclasses:

> - IAM Pre-583 Plan Subclass - Gregory
>
> - IAM 583 Plan Subclass - Schwenk
>
> - Washington State & Gary Plants Subclass - Quiroga

Proposed Second Am. Class Action Compl. ¶¶ 19-21, 50.  As a threshold matter, the Court finds Gregory and Quiroga can not serve as subclass representatives because they are not residents of the State of Minnesota and Rexam has offered no evidence that they possess the minimum contacts necessary for this Court to exercise in personam jurisdiction over them.[4]  See Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072-74 (8th Cir. 2005).  Without personal jurisdiction over the class representative, the Court has no jurisdiction over the class.  See Calagaz, 309 F.2d at 253.  The remaining question is whether Rexam should be granted leave to add Schwenk as the representative of the IAM 583 Plan Subclass.

Under Rule 15(a), leave to amend should be freely given when justice so requires but may be denied when "undue delay, bad faith on the part of the moving party, futility of the

---

[4]  Apparently, with the exception of Erickson, Schwenk is the only Rexam retiree who was represented by IAM currently residing in Minnesota.  See Proposed Second Am. Class Action Compl. ¶¶ 19-21.

amendment, or unfair prejudice to the non-moving party can be demonstrated." Roberson v. Hayti Police Dept., 241 F.3d 992, 995 (8th Cir. 2001). When the motion to amend is made after the deadline set in the Pretrial Scheduling Order, Rule 16(b) only permits modification "upon a showing of good cause." Fed. R. Civ. P. 16(b). "The primary measure of Rule 16's 'good cause' standard is the moving parties' diligence in attempting to meet the case management order's requirements." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

The deadline for amending pleadings or adding parties in the instant action expired on June 1, 2004. See Pretrial Scheduling Order [Docket No. 58].[5] Rexam proposed the eleven USWA and IAM subclasses based on the various CBAs and plans. This material was in Rexam's possession before litigation commenced, and was produced as part of Rexam's pretrial disclosures in March 2004. See Id. In February 2004, Rexam represented it was prepared to file its class certification motion and objected to any discovery on class certification issues. Rule 26(f) Report [Docket No. 54] at 5-6. Furthermore, on November 4, 2004, four days before the first deposition was taken, Rexam forwarded Defendants a copy of its proposed subclass definitions. Tedrow Aff. [Docket No. 98] ¶ 2, Ex. A. These subclasses are identical to those eventually proposed in the present motion. Rexam did not file its Conditional Motion to Amend until March 7, 2005.

Rexam contends that it initiated discussions regarding the proposed subclasses at an early stage in the litigation to facilitate management of the case. As it believed the class could be

_____

[5] On February 7, 2005, Magistrate Judge Arthur J. Boylan entered an Amended Pretrial Scheduling Order [Docket No. 81], which explicitly stated it only altered the deadlines specifically addressed in the amended order. As the deadline for amending pleadings or adding parties was not modified by the amended order, the June 1, 2004 deadline provided in the February 26, 2004 Pretrial Scheduling Order remains in force.

certified as a whole, subclass representatives were necessary only as a means of helping to manage the case, not essential to its certification. However, IAM has consistently contended Rexam's proposed class was overbroad and certification would depend on the individual subclasses. Furthermore, even if the addition of individual defendants to serve as subclass representatives was only to assist in managing the litigation, Rexam did not need to wait until March 7, 2005 to identify the representatives. Therefore, whether subclasses were necessary to certify the entire class or as management tools, Rexam had ample opportunity to amend the Complaint before its March 7, 2005 motion. In addition, granting Rexam's Motion to Amend now would further delay the litigation since the newly added defendants would have to file an answer, be deposed and may contest their adequacy as class representatives. Finally, Rexam's motion is arguably futile since the Court has no jurisdiction over two of the three proposed defendants. As a result, the Court denies Rexam's Contingent Motion to Amend Complaint to the extent it seeks to add individual, named defendants to represent the IAM subclasses.

Because Erickson is not an adequate subclass representative, Rexam did not name any additional IAM retirees as individual defendants in its Amended Complaint, and Rexam failed to show the good cause necessary to amend its Complaint, there are no adequate representatives for any of the proposed IAM subclasses. As a result, Rexam has failed to satisfy the requirements of Rule 23(a)(4) and the motion to certify the IAM subclasses must be denied.

### b.      USWA Subclasses

The Amended Class Action Complaint currently names the following individual defendants who may serve as representatives for the USWA subclasses:

- USWA 583 Plan Subclass - Slagerman, Rudolph, Stolarski

- Whitehouse Plant Subclass - Kieswether

- Valparaiso Plant Subclass - Kneifel, Rearick, Wilson

See Am Class Action Compl. ¶¶ 6-9, 11-13.  In its Contingent Motion to Amend the Complaint, Rexam requests leave to add the individual defendants listed below to serve as representatives for the remaining USWA subclasses:

- NCC USWA Subclass - Martha K. Yanosh ("Yanosh")

- ANC USWA (Former NCC plants) Pre-583 Plan Subclass - Gregory G. George ("George")

- ACC USWA and ANC USWA (Former ACC Plants) - Delma V. Sisson ("Sisson")

- USWA Managed Care Election Subclass - Donna M. Hogan ("Hogan")

See Proposed Second Am. Class Action  Compl. ¶¶  15-18, 49.  As USWA stipulated to Rexam's Motion to Amend the Complaint, adding the aforementioned individuals does not raise the same concerns as Rexam's attempt to name additional IAM retirees.  Contingent Stipulation of Rexam Inc. and USWA Defs. for Amendment of Class Action Compl. ("Stipulation to Amend Compl.") [Docket No. 100].  Although the parties have stipulated to the subclass representatives, the Court must still conduct an independent analysis to determine whether the representatives meet Rule 23(a)(4)'s adequacy requirements.  Hervey, 787 F.2d at 1227.

A review of the proposed subclass representatives indicates the following representatives do not reside in Minnesota:

- ACC USWA and ANC USWA (Former ACC Plants) - Sisson

- USWA Managed Care Election Subclass - Hogan

17

- Whitehouse Plant Subclass - Kieswether

- Valparaiso Plant Subclass - Kneifel, Rearick, Wilson

Proposed Second Am. Class Action Compl. ¶¶ 9, 11-13, 17-18, 49.  Once again, neither Rexam nor USWA has provided any evidence that these individual defendants possess sufficient minimum contacts for the Court to exercise in personam jurisdiction over them.  See Dever, 380 F.3d at 1072-74.  As a result, these individual defendants are inadequate class representatives and the Court lacks jurisdiction over the aforementioned four subclasses.  See Calagaz, 309 F.2d at 253.  In their stipulation, Rexam and USWA agree, in the event any individual defendant is deemed inadequate, to work together to identify an appropriate subclass representative. Stipulation to Am. Compl. ¶ 2.  As a result, the Court grants Rexam and USWA 60 days to find and add appropriate representatives for the ACC USWA and ANC USWA (Former ACC Plants) Subclass, the USWA Managed Care Election Subclass, the Whitehouse Plant Subclass, and the Valparaiso Plant Subclass.

The Court finds the individual defendants for the three remaining USWA classes have common interests with the class members and will vigorously prosecute the interests of the class through qualified counsel.  All of the proposed class representatives are former Rexam employees who claim benefits under USWA plans.  There is no indication that their claims or interests are adverse to the rest of their respective subclasses.  Furthermore, the Stipulation to Amend Complaint indicates that each individual defendant will retain USWA counsel to represent them.  Id.  Assuming appropriate amendment of the Complaint, the USWA 583 Plan Subclass, the NCC USWA Subclass, and the ANC USWA (Former NCC plants) Pre-583 Plan

Subclass meet Rule 23(a)(4)'s adequacy requirement.

### 2.        Rule 23(b) Requirements

Upon satisfying the four requirements of Rule 23(a), a party seeking class certification

must also demonstrate that the action falls within one of the three categories of Fed. R. Civ. P.

23(b).  In their Joint Motion for Class Certification, Rexam and USWA move for certification

under either, or both, Rule 23(b)(1)(A) or (b)(2).  Joint Mot. for Class Certification ¶¶ 7, 12-13.

Despite the parties' stipulation, the Court must independently evaluate whether the USWA 583

Plan Subclass, the NCC USWA Subclass, and the ANC USWA (Former NCC plants) Pre-583

Plan Subclass meet Rule 23(b)'s requirements.  Hervey, 787 F.2d at 1227.

> Rule 23(b) provides, in relevant part:
>
> An action may be maintained as a class action if the prerequisites of subdivision are
> satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class
> would create a risk of
>
>> (A) inconsistent or varying adjudications with respect to individual members of
>> the class which would establish incompatible standards of conduct for the party
>> opposing the class
>
> * * * *
>
> (2) the party opposing the class has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive relief or
> corresponding declaratory relief with respect to the class as a whole . . . .

Fed. R. Civ. P. 23(b).

The Eighth Circuit has held that "Rule 23(b)(2) certification is appropriate when

plaintiffs seek injunctive relief from acts of an employer on grounds generally applicable to the

class." Paxton, 688 F.2d at 563 (internal quotations and citations omitted); see also Smith v.

United HealthCare Servs., Inc., 2002 U.S. Dist. LEXIS 2140, *15 (D. Minn. Feb. 5, 2002).

Although the posture of the instant case is for declaratory judgment by the employer, rather than

injunctive relief by the employee, the principles are the same.  In John Morrell & Co. v. United

Food & Commercial Workers Int'l Union, a case similar to the instant matter, an employer filed

suit against a class of retired former employees seeking a declaratory judgment that retiree

welfare benefits were not vested.  825 F. Supp. 1440 (D.S.D. 1993), aff'd, 37 F.3d 1302 (8th Cir.

1994).  The parties stipulated class certification was appropriate under either Rule 23(b)(2) or

(b)(1)(A) or (B) and the Court certified the class.  Morrell Stipulation (App. 3 [Docket No. 93]);

see also McKay v. County Election Commissioners for Pulaski County, Arkansas, 158 F.R.D.

620 (E.D. Ark. 1994) (finding certification of defendant class under Rule 23(b)(2) appropriate

when plaintiffs sought declaratory and injunctive relief to require defendants to take affirmative

steps to implement ADA).  For each of the subclasses in the instant case, the relief sought is

declaratory and injunctive based on Rexam's proposed class-wide modifications to the retirees'

welfare benefits.  As a result, certification of each subclass is appropriate under Rule 23(b)(2).[6]

Having found that three USWA subclasses satisfy the requirements of Rule 23(a) and (b),

the following subclasses are certified:

> NCC USWA Subclass (approximately 553 members) - retirees formerly represented by
> the USWA who retired from NCC between March 1, 1960 and August 31, 1987 who are
> receiving benefits or are eligible to receive benefits, and their surviving spouses currently
> receiving benefits, pursuant to retiree welfare benefit plans sponsored by Rexam.

---

[6]  As Rexam and USWA have stipulated that certification is appropriate under Rule 23(b)(2), the
Court will not address whether the alternate ground of certification under Rule 23(b)(1)(A) is
necessary at this time.

20

ANC USWA (Former NCC Plants) Pre-583 Plan Subclass (approximately 614 members) - retirees formerly represented by the USWA who worked at former NCC plants and retired from ANC after August 31, 1987 and before August 1, 1994 who are receiving benefits or are eligible to receive benefits, and their surviving spouses currently receiving benefits, pursuant to retiree welfare benefit plans sponsored by Rexam.

USWA 583 Plan Subclass (approximately 561 members) - retirees formerly represented by the USWA who retired from ANC and Rexam plants between August 1, 1994 and the present who are receiving benefits or are eligible to receive benefits, and their surviving spouses currently receiving benefits, pursuant to retiree welfare benefit plans sponsored by Rexam.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Plaintiff's Motion to Certify Class [Docket No. 76] is **DENIED**;

2.  Plaintiff and Defendant USWA's Joint Motion to Certify Class [Docket No. 89] is

**GRANTED** as to the NCC USWA Subclass, the ANC USWA (Former NCC Plants) Pre-583

Plan Subclass, and the USWA 583 Plan Subclass**,** and **DENIED** as to the ACC USWA and ANC

USWA (Former ACC Plants) Pre-583 Plan Subclass, the USWA Managed Care Election

Subclass, the Whitehouse Plant Subclass and the Valparaiso Plant Subclass; and

3.  Plaintiff's Conditional Motion to Amend/Correct Amended Complaint [Docket No.

83] is **GRANTED** as to Martha K. Yanosh and Gregory G. George and **DENIED** as to the

remaining individual defendants.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 25, 2005.

22