# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Rexam Inc.,

       Plaintiff,

    v.

United Steel Workers of America,
AFL-CIO-CLC; International Association
of Machinists and Aerospace Workers;
United Steel Workers of America,
AFL-CIO-CLC, Local 0188S; and
Waldo W. Slagerman; Marlene A.
Rudolph; Steven J. Stolarski; Frank
Kieswether; Larry Alford; George A.
Kneifel; Gail J. Rearick; Dwayne L.
Wilson; and Lloyd W. Erickson,
Individually, and as Representatives of
Persons Similarly Situated,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Case No. 03-2998 ADM/AJB

---

James P. McLoughlin, Jr., Esq., Moore & Van Allen, Charlotte, NC, and Timothy E.
Branson, Esq., Dorsey & Whitney LLP, Minneapolis, MN argued on behalf of Plaintiff.

Edward J. Feinstein, Esq. and Stephen M. Pincus, Esq., Stember Feinstein Krakoff, Pittsburgh,
PA, argued for United Steel Workers of America, AFL-CIO-CLC, United Steel Workers of
America, AFL-CIO-CLC, Local 0188S, Marlene A. Rudolph, Steven J. Stolarski, Frank
Kieswether, Larry Alford, George A. Kneifel, Gail J. Rearick and Dwayne L. Wilson.

Sally M. Tedrow, Esq., O'Donoghue & O'Donoghue LLP, Washington DC, argued for
International Association of Machinists and Aerospace Workers and Lloyd W. Erickson.

---

# I.  INTRODUCTION

This matter is before the undersigned United States District Judge on a series of motions.

In its Complaint, Rexam, Inc. ("Plaintiff" or "Rexam") seeks a declaratory judgment that, under the § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), Rexam has the right to modify the terms of the health and welfare benefits of its retirees.  The United Steel Workers of America, AFL-CIO-CLC and United Steel Workers of America, AFL-CIO-CLC, Local 0188S (collectively, "USWA"), Waldo W. Slagerman ("Slagerman"), Marlene A. Rudolph ("Rudolph"), Steven J. Stolarski ("Stolarski"), Frank Kieswether ("Kieswether"), Larry Alford ("Alford"), George A. Kneifel ("Kneifel"), Gail J. Rearick ("Rearick"), and Dwayne L. Wilson ("Wilson") (collectively, "individual defendants") contend the retirees' medical benefits were earned and vested.  They argue Rexam would violate its obligation under the various collective bargaining agreements ("CBAs") by modifying the terms of the plans. The International Association of Machinists ("IAM") and Lloyd W. Erickson ("Erickson") filed a counterclaim alleging Rexam breached the parties' negotiated CBAs by filing the declaratory action in federal court since disputes regarding the modification of benefits are subject to mandatory arbitration.[1]

In a May 25, 2005 Order [Docket No. 119], this Court granted in part and denied in part Rexam's Motion to Certify Class [Docket No. 76] and Contingent Motion to Amend/Correct Amended Complaint  [Docket No. 83].  Subsequently, the Court granted Rexam's request to reconsider whether Defendants Kieswether, Kneifel, Rearick and Wilson have consented to this Court's personal jurisdiction and may be certified as representatives of certain USWA

---

[1]  Unless specifically noted, use of the terms "USWA" and "IAM" will include the unions' individually named defendants.

subclasses.  July 12, 2005 Letter from the Court [Docket No. 137].  Rexam also requested the

Court reconsider the portion of its May 25, 2005 Order finding that certification of one large

class of retirees is appropriate [Docket No. 159].

Following the Court's May 25, 2005 Order, the USWA, Kieswether and Kneifel and an

individual defendant not named in the instant action, Paul Baker ("Baker"), filed a Complaint

challenging Rexam's ability to modify its retirees benefits in the District of Ohio.  See July 11,

2005 Letter from Branson to Court [Docket No. 135] (discussing undocketed June 8, 2005 Letter

from Feinstein to Court).  Rexam claims this action violates this Court's October 30, 2003 Order

[Docket No. 42] enjoining a similar Ohio federal lawsuit commenced by Kieswether, Alford and

the USWA.  Id.  As a result, Rexam seeks to hold Defendants USWA, Kieswether, Kneifel, and

Non-Party Paul Baker in contempt of court [Docket No. 172].

The parties also appeal portions of Magistrate Judge Arthur J. Boylan's August 10, 2005

Order entitled, "Order on Plaintiff's Motion to Strike Defendant's Jury Demand and Co-

Defendant's Motion for Court to Direct a Jury Trial" ("August 10, 2005 Order") [Docket No.

157].  Rexam contends the Order erroneously concluded USWA sought legal relief and was

entitled to a jury trial [Docket No. 162].  IAM argues the Order erroneously denied its Motion

for Court to Direct a Jury Trial [Docket No. 167].

The pertinent facts are set forth in the May 25, 2005 Order and are incorporated by

reference.

## II.  DISCUSSION

A.      **Motion to Reconsider Personal Jurisdiction**

1.      **USWA Whitehouse Plant Subclass and the Valparaiso Plant Subclass**

Although factual and legal differences prevented the certification of one large class of USWA and IAM retirees, the Court found certification of narrower subclasses appropriate.  May 25, 2005 Order at 6-9.    The Court denied class certification to the USWA Whitehouse Plant Subclass and the Valparaiso Plant Subclass on the grounds that Kieswether, Kneifel, Rearick and Wilson, the proposed subclass representatives, did not possess sufficient minimum contacts in Minnesota for this Court to exercise in personam jurisdiction.[2]  Id. at 10;   see Calagaz v. Calhoon, 309 F.2d 248, 253 (5th Cir. 1962).  The Court recently granted Rexam's request to reconsider this narrow issue.

The Court now finds Kieswether, Kneifel, Rearick and Wilson have consented to personal jurisdiction in Minnesota.  The Eighth Circuit has stated that:

> Consent is the other traditional basis of jurisdiction [in addition to territorial sovereignty] . . .  Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner.  A defendant may voluntarily consent to or submit to the jurisdiction of a court which otherwise would not have personal jurisdiction over it.

Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199 (8th Cir. 1999).  If a defendant consents to personal jurisdiction in a particular forum, a minimum contacts inquiry is unnecessary.  See Ytuarte v. Gruner & Jahr Printing and Pub. Co., 935 F.2d 971, 972 (8th Cir. 1991).

---

[2] Kieswether is the proposed representative of the Whitehouse Plant Subclass while Kneifel, Rearick and Wilson are the proposed representatives of the Valparaiso Plant Subclass.

4

Kieswether, Kneifel, Rearick and Wilson have been parties to this case since the filing of Rexam's Amended Class Action Complaint ("Am. Compl.") [Docket No. 3] on May 20, 2003. They did not contest personal jurisdiction in their Answer to the Amended Complaint ("Answer") [Docket No. 48], dated December 12, 2003, or by motion and have actively participated in this case.  Indeed, Kieswether, Kneifel, Rearick and Wilson seek to be subclass representatives and have admitted they "will fairly and adequately protect the interests of the USW Subclass."  Am. Compl. ¶ 43; Answer ¶ 43.  Under governing case law and Rule 12(h)(1) of the Federal Rules of Civil Procedure, their right to raise a personal jurisdiction defense has been waived for some time.  See Yeldell v. Tutt, 913 F.2d 533 (8th Cir. 1990).  Defendants Kieswether, Kneifel, Rearick and Wilson acknowledge they have consented to this Court's personal jurisdiction.  USWA Mem. Re: Consenting to Jurisdiction [Docket No. 155] at 2.

Having determined that Kieswether, Kneifel, Rearick and Wilson have consented to personal jurisdiction in this forum, the Court finds they satisfy Rule 23(a)(4)'s adequacy requirement for class representatives.  Kieswether, Kneifel, Rearick and Wilson have common interests with the class members and have pledged to vigorously prosecute the interests of the class through qualified counsel.  See Answer to Am. Compl. ¶ 43, Joint Mot. to Certify Class [Docket No. 89] ¶ 11.  All of the proposed class representatives are former Rexam employees who claim benefits under USWA plans.  There is no indication that their claims or interests are adverse to the rest of their respective subclasses.  Having satisfied Rule 23(a)(4)'s adequacy requirement for class representatives, the Court, for reasons discussed in the May 25, 2005 Order, certifies the following classes under Rule 23(a) and (b)(2):

Whitehouse Plant Subclass (approximately 45 members) - retirees formerly represented by the USWA who retired from Rexam's Whitehouse, Ohio plant who are receiving benefits or are eligible to receive benefits, and their surviving spouses currently receiving benefits, pursuant to retiree welfare benefit plans sponsored by Rexam.

Valparaiso Plant Subclass (approximately 63 members) - retirees formerly represented by the USWA who retired from Rexam's Valparaiso, Indiana plant who are receiving benefits or are eligible to receive benefits, and their surviving spouses currently receiving benefits, pursuant to retiree welfare benefit plans sponsored by Rexam.

**2.     ACC USWA and ANC USWA (Former ACC Plants) Subclass and USWA Managed Care Election Subclass**

Concurrent with its Motion to Certify Class, Rexam filed a Contingent Motion to Amend/Correct Amended Complaint ("Contingent Motion").  The Contingent Motion would allow amendment of the Complaint to add additional individual Defendants and insure each subclass had an adequate personal representative.  The USWA stipulated to the addition of these individual Defendants.  Contingent Stipulation of Rexam Inc. and the USWA Defendants for Amendment of Class Action Compl. ("Stipulation") [Docket No. 100].  Specifically, the parties sought to add Donna Hogan ("Hogan") as the representative of the proposed USWA Managed Care Election Subclass and Delma Sisson ("Sisson") as a representative of the proposed ACC USWA and ANC USWA (Former ACC Plants) Subclass.  Neither Hogan nor Sisson reside in Minnesota.  Proposed Second Am. Class Action Compl. [Docket No. 83] ¶¶ 17-18.   In the May 25, 2005 Order, the Court found Hogan and Sisson lacked the minimum contacts necessary to establish personal jurisdiction in this forum.  May 25, 2005 Order at 17-18.  Lacking adequate class representatives, the Court denied certification of the ACC USWA and ANC USWA (Former ACC Plants) Subclass and USWA Managed Care Election Subclass.  Id.

As part of the reconsideration of the May 25, 2005 Order, Rexam and USWA were asked

to brief whether Hogan and Sisson had consented to this Court's jurisdiction.  July 12, 2005

Letter from the Court at 2.  The parties disagree about USWA's obligations under the Stipulation

and whether Hogan has consented to this Court's exercise of personal jurisdiction.

> The Stipulation sets forth the following obligations:

> In the event that the Court both (1) certifies a class including the USWA Defendant Class, and (2) divides the certified USWA class into subclasses, Rexam and the USWA Defendants hereby stipulate and agree as follows:

> 2.      Rexam's currently proposed Second Amended Complaint adds [Sisson and Hogan] as named defendants who would be representatives of proposed USWA subclasses.  Counsel for the USWA Defendants is in the process of asking these individuals whether they are willing to serve as named-defendant representatives and will ask them to sign retainers.  Counsel for the USWA Defendants will advise counsel for Rexam when these retainers have been received, and counsel for Rexam may then serve and file Rexam's currently proposed Second Amended Class Action Complaint.  In the event that any of the proposed new individual defendants do not sign retainers, counsel for the USWA Defendants will inform counsel for Rexam which of the proposed additional named defendants is/are unable or inadequate or unwilling to serve as a named-defendant representative and counsel for Rexam and counsel for USWA will work together to identify one or more additional individuals to serve as a named-defendant representative, and counsel for Rexam and counsel for the USWA Defendants will work together to identify one or more additional individuals to serve as a named-defendant representative for any USWA subclass not currently represented by a named defendant.  Counsel for the USWA Defendants will proceed as set forth herein with regard to such jointly identified individuals, until an adequate representative is identified for each USWA subclass, at which time Rexam may serve and file a Second Amended Action Complaint so that each USWA subclass has an adequate named-defendant representative.

Stipulation at 2-3.

Rexam and USWA agree that Hogan and Sisson had not signed retainers with the USWA

defense counsel as of March 29, 2005, the date the Stipulation was signed.  As a result, Hogan

and Sisson had not yet consented to this Court's personal jurisdiction.  On July 28, 2005, USWA

informed Rexam that Sisson would not sign the retainer.  Therefore, Sisson has not consented to,

and does not possess the minimum contacts necessary to support, personal jurisdiction in this forum.  As a result, she is not an appropriate representative of the proposed ACC USWA and ANC USWA (Former ACC Plants) Subclass.

On July 28 2005, USWA informed Rexam that Hogan had signed the retainer.  Rexam contends signing the retainer acknowledges her consent to the Court's personal jurisdiction and makes her an appropriate representative of the USWA Managed Care Election Subclass.  Rexam argues the Stipulation committed the USWA to find adequate and willing subclass representatives - a commitment that would be illusory if the representatives could subsequently contest consent to this Court's personal jurisdiction over them.  USWA claims Hogan has not consented to this Court's jurisdiction and retains the right to object to her participation based on lack of personal jurisdiction.  See Fed. R. Civ. P. 12(h).

Although Hogan signed a retainer, she has not appeared, filed an answer or otherwise actively participated in the instant lawsuit.  See Ex parte Republic of Peru, 318 U.S. 578, 587 (1943); Network Professionals, Inc. v. Network Int'l Ltd., 146 F.R.D. 179, 184 (D. Minn. 1993). Furthermore, Hogan has not yet been added as a named Defendant.  As a result, Hogan has neither consented to the exercise of this Court's personal jurisdiction nor waived her right to object to her participation for lack of personal jurisdiction. According to counsel for USWA, Hogan no longer wishes to be party to this suit.  Rexam does not contend Hogan, who is not a resident of Minnesota, has sufficient minimum contacts to support personal jurisdiction in this forum absent consent.  As a result, this Court finds it lacks personal jurisdiction over Hogan and she cannot serve as a subclass representative.

Finally, Rexam's argument that the Stipulation requires USWA to find adequate representatives for the remaining subclasses is rejected. USWA's obligations under the Stipulation are explicitly conditioned upon the condition precedent of the Court certifying one large class of USWA retirees.[3] This necessary condition did not occur. The condition is also material because, had one large class of USWA retirees been certified, personal jurisdiction would not have been necessary over each subclass representative. The Court would need personal jurisdiction over only the class representative since the subclasses would have been for trial management purposes only. See In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106, 1129 (7th Cir. 1979); United States Fidelity & Guarantee Co. v. Lord, 585 F.2d 860, 865 (8th Cir. 1978). In the absence of one large class, personal jurisdiction over each subclass representatives is imperative. See Fed. R. Civ. P. 23(c)(4)(B); Paxton v. Union Nat'l Bank of Little Rock, 688 F.2d 552, 559 (8th Cir. 1982). The Stipulation did not require USWA to obtain the consent of non-Minnesota residents to this Court's jurisdiction.[4] Because the Court found certification of one large class of USWA retirees inappropriate, the USWA does not have any continuing obligations under the Stipulation.

For the aforementioned reasons, neither Sisson nor Hogan has consented to the Court's

---

[3] The Stipulation provides: "In the event that the Court both (1) certifies a class including the USWA Defendant Class, and (2) divides the certified USWA class into subclasses, Rexam and the USWA Defendants hereby stipulate and agree as follows . . ."

[4] USWA also asserts that the Court ruled non-Minnesota residents could not serve as class representatives. USWA misinterprets the Court's holding. In the absence of consent, a Court lacks jurisdiction over a party unless they reside in the state or have sufficient minimum contacts with the forum state. Many of the proposed subclass representatives were not Minnesota residents. As a result, their consent or sufficient minimum contacts was necessary for this Court to exercise personal jurisdiction over them.

personal jurisdiction.  Without an adequate representative, certification of the ACC USWA and

ANC USWA (Former ACC Plants) Subclass and USWA Managed Care Election Subclass is

inappropriate.

**B.     Request to Reconsider Appropriateness of One Large Class of USWA and IAM
         Retirees**

In an August 15, 2005 letter, Rexam requests leave to move for reconsideration of the

denial of certification of one defendant class of USWA and IAM retirees.  Rexam argues IAM

previously asserted that the factual and legal differences between the CBAs governing the IAM

and USWA retirees' benefits made certification of one large class inappropriate.  Rexam

contends IAM's subsequent argument that the claims of IAM and USWA "turn on the same

metric of facts and concern the same general area of dispute" for jury demand purposes is

inconsistent with IAM's prior assertion and justifies reconsideration of the class certification

issue.  IAM Jury Demand Mem. at 4.

The Court assessed whether certification of one large defendant class was appropriate

and determined "the individual differences between the eleven different groups of plans and

CBAs, the companies who negotiated them, the separate unions and the individual bargaining

groups override any common factual or legal questions."  May 25, 2005 Order at 9.  The facts

cited in Rexam's own Memorandum in Support of Class Certification support this conclusion.

Pl's. Mem. in Supp. of M. for Class Certification [Docket No. 78] at 3-9, 14, 27-28.

Furthermore, Rexam offers no case law to support its statement that the Rule 23(a)(2) test

for class certification is "less strict" than the Rule 38 test for a jury demand.  The criteria and

analysis under the rules are different.  Given the similarity of the pension claims at issue in the

instant matter, IAM's assertion that "the nature of the USWA issues and the IAM issues are

clearly identical for purposes of the Seventh Amendment analysis" is not surprising.  IAM Jury

Mem. at 6.  However, Judge Boylan ultimately rejected IAM's Rule 38(c) argument and found

the IAM counterclaim factually distinct from the USWA claims.  Aug. 10, 2005 Order at 9-10.

The Court concurs with Judge Boylan's assessment.  As a result, there is no inconsistency in the

Court's resolution of the class certification and jury demand questions.

**C.     Motion to Show Cause**

In a June 8, 2005 letter, USWA informed the Court that Kieswether, Kneifel and the

USWA, along with Baker (a non-party to the instant suit) had filed a Complaint in the Northern

District of Ohio on behalf of the USWA Whitehouse Plant Subclass, the Valparaiso Plant

Subclass and the USWA Managed Care Election Subclass.  The letter also stated: "We

understand that counsel for [Rexam] has asked Your Honor to reconsider your ruling.  In the

event you grant reconsideration and certify these subclasses, we will immediately withdraw the

Ohio suit."  See USWA's Mem. Re: Consenting to Jurisdiction at 2-3 (quoting undocketed June

8, 2005 Letter from Feinstein to Court).

As previously noted, USWA and a number of the individually named Defendants,

including Kieswether and Kneifel originally filed a similar suit in Ohio federal court.  In an

October 30, 2003 Order [Docket No. 42], this Court found "the Minnesota and Ohio suits present

the same factual and legal issues" and applied the first filed rule to enjoin the Ohio action.  Oct.

30, 2003 Order at 14-15; see Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002,

1006-07 (8th Cir. 1993).  Under Rule 65, this injunction applies to the parties to the action, their

11

attorneys and all "persons in active concert or participation with them who receive actual notice of the order . . . " Fed. R. Civ. P. 65(d). Rexam argues USWA, Kieswether, Kneifel and Baker violated the October 30, 2003 Order by filing the most recent Ohio law suit and moves they show cause why they should not be held in contempt of court.

This Order now certifies the USWA Whitehouse Plant and Valparaiso Plant Subclasses with Kieswether and Kneifel as their respective subclass representatives. Consequently, the Court expects USWA, Kieswether and Kneifel to abide by their representation that they will withdraw the Ohio suit as it relates to these subclasses. Assuming this action is promptly taken, the Court finds no sanctions are warranted.[5]

USWA and Baker argue that the new Ohio suit should not be completely withdrawn because the Court did not certify the USWA Managed Care Election Subclass. Rexam argues the October 30, 2003 Order also bars Baker from bringing the Ohio law suit because he is acting in concert with the enjoined parties. The first Ohio suit was enjoined because it presented "the same factual and legal issues" and because it was anticipated that all of USWA's claims would be resolved in the Minnesota action. Baker is a non-party to the current suit and the USWA Managed Care Election Subclass has not been certified. Counsel for USWA is no longer obligated under the Stipulation to find an appropriate class representative and the 60-day extension for finding appropriate class representatives has expired. See May 25, 2005 Order at 18 (granting parties a 60 day extension to find suitable representatives for the proposed USWA

---

[5]  The Court notes, however, that USWA, Kieswether and Kneifel's argument that they were not enjoined from filing the Ohio suit because the subclasses they sought to represent were not certified is rejected. Kieswether and Kneifel remained named Defendants in the instant suit and their individual claims were still before this Court when the Ohio suit was filed.

subclasses that were not certified).  As a result, claims pertaining to the USWA Managed Care

Election Subclass will not be resolved in the instant case.  Therefore, this case and a portion of

the Ohio case no longer involve the same factual and legal issues.  Enjoining Baker and the

USWA from filing the recent action in Ohio federal court would leave them without a forum for

the case to be heard.

For the aforementioned reasons, Rexam's Motion to Show Cause Why the USWA,

Kieswether, Kneifel and Baker Should Not be Held in Contempt of Court is denied.

**D.     Objections to August 10, 2005 Order**

Both Rexam and IAM appeal portions of Judge Boylan's August 10, 2005 Order.  Rexam

contends its Motion to Strike USWA's Jury Demand was denied based on the erroneous

conclusion that the relief requested under § 301 of the LMRA was legal rather than equitable.

IAM argues the Order erroneously denied its Motion for the Court to Direct a Jury Trial.

**1.     Rexam's Appeal**

**i.      Right to Jury Trial Under the Seventh Amendment**

Rexam contends the USWA is not entitled to a jury trial for its LMRA claims.  Section

301 of the LMRA does not expressly include a right to a jury trial.  See 29 U.S.C. 185(a).

Therefore, any right to a jury trial must be preserved in the Seventh Amendment of the United

States Constitution.  In determining whether the Seventh Amendment requires a jury trial on a

particular issue, the Supreme Court has directed courts to conduct a two-step analysis.  Courts

first "compare the statutory action to 18th-century actions brought in the courts of England prior

to the merger of the courts of law and equity" and second, "examine the remedy sought and

determine whether it is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-18

(1987) (citations omitted).  The second stage of the analysis is weighed more heavily than the

first. Id. at 421.

    As Judge Boylan correctly concluded, a claim under § 301 alleging an employer

breached a collective bargaining agreement "is comparable to a breach of contract claim - a legal

issue." Aug. 10, 2005 Order at 4, quoting Chauffeurs, Teamsters & Helpers, Local No. 391 v.

Terry, 494 U.S. 558 (1990); see also Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512,

1516 (8th Cir. 1988).  Rexam does not contest the Order's conclusion that a claim under § 301

presents a legal issue and satisfies the first prong of the test.

    Rexam does contest the Order's determination that the remedy sought by USWA is legal

rather than equitable in nature.  USWA seeks three types of relief.  First, USWA requests a

declaratory judgment stating Rexam violated its obligations under the plan.  Answer at 18.  As

"declaratory relief per se is neither legal nor equitable," courts must determine whether a right to

a jury trial would have arisen in an action other than one for declaratory judgment.  Northgate

Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1099 (8th Cir. 1997).  As a result, the Court must

look to whether the remaining relief sought is legal or equitable.

    Second, the USWA requests the Court order "Rexam to perform its contractual and

statutory obligation."  Answer at 18.  The Order correctly found this request is best characterized

as specific performance, which is an equitable remedy.  Aug. 10, 2005 Order at 5; Southern

Council of Industrial Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996).

    Third, the USWA requests the Court "award monetary damages to restore the affected

USWA class members to the position in which they would have been but for Rexam's

contractual statutory violations."  Answer at 18.  Rexam contends Judge Boylan erroneously

found this request constituted legal relief and entitled USWA to a jury trial.

The Supreme Court has stated that claims for monetary relief to compensate the injured

party for a breach of contract are suits for money damages, "the classic form of legal relief."

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002).  Rexam contends,

however, that the monetary award sought by USWA is actually equitable restitution because it

follows from the specific performance and an injunction compelling present and future payment

of purportedly vested benefits.  Pl.'s Corrected Brief in Supp. of its Appeal ("Rexam's Appeal

Brief") [Docket No. 168] at 3-4.  As a result, Rexam argues the monetary award is dependent on

and incidental to the equitable relief.

Restitution is equitable "where money or property identified as belonging in good

conscience to the plaintiff could clearly be traced to particular funds or property in the

defendant's possession."  Great-West, 534 U.S. at 213 (citations omitted).  However, where "the

property [sought to be recovered] or its proceeds have been dissipated so that no product

remains, [the plaintiff's] claim is only that of a general creditor and the plaintiff cannot enforce a

constructive trust of or an equitable lien upon property of the [defendant]."  Id. at 213-14

(citations and quotations omitted).  See also Calhoon v. Trans World Airlines, 400 F.3d 593,

596-97 (8th Cir. 2005) (citing Great-West for the proposition that "if the property traceable to

the plaintiff has been dissipated, only a legal claim of a general creditor remains").  Furthermore,

it is well established that "[i]f a legal claim is joined with an equitable claim, the right to [a] jury

15

trial on the legal claim, including all issues common to both claims, remains intact.  The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought."  Tull, 481 U.S. at 425 (citations omitted).

In this case, Rexam is not in possession of any "traceable" funds that would be paid to retirees as a remedy.  The measure of damages to be paid to retirees under the LMRA is their actual "loss."  For example, if the retirees obtained replacement medical coverage, their damages may exceed the amount Rexam was contractually obligated to provide.  See Galindo v. Stoody, 793 F.2d 1502, 1517 (9th Cir. 1986) (stating that damages for an LMRA plaintiff losing medical insurance should include compensation for "the loss of those benefits if the plaintiff has purchased substitute insurance coverage or has incurred, uninsured, out-of-pocket medical expenses for which he or she would have been reimbursed under the employer's insurance plan").  Rexam relies on Bowen v. Massachusetts for the proposition that restitution may accompany an equitable action for specific relief.  487 U.S. 879, 893-94 (1988).  Nonetheless, the measure of damages sought by USWA exceeds that available for specific performance and cannot be considered incidental to the equitable relief sought.

In addition to Bowen, Rexam relies on several Eighth Circuit cases.  See Howe v. Varity Corp., 36 F.3d 746 (8th Cir. 1994); Brown v. Aventis Pharmaceuticals, Inc., 341 F.3d 822 (8th Cir. 2003); Calhoon, 400 F.3d 593.  These cases are distinguishable, however, because they considered whether relief requested under ERISA was equitable in nature and therefore available

16

under the statute.[6]  None of the cases address claims for legal relief under the LMRA.[7]

Although the Eighth Circuit has not examined this precise question, district courts in this Circuit have presided over jury trials for claims alleging breach of a CBA in violation of ERISA and the LMRA.  See John Morrell & Co. v. Local Union 304A, UFCA, 913 F.2d 544, 548 (8th Cir. 1990), cert. denied 500 U.S. 905 (1991); Iowa Beef Processors v. Amalgamated Meat Cutters & Butcher Workmen, 597 F.2d 1138, 1141 (8th Cir.), cert. denied 444 U.S. 840 (1979). Nearly all courts in other circuits who have considered this issue have found a jury trial is permitted when claims are brought under both ERISA and the LMRA.  See e.g., Stewart v. KHD Deutz, 75 F.3d 1522 (11th Cir. 1996); Senn v. United Dominion Indus., 951 F.2d 806 (7th Cir. 1992), cert. denied, 113 S. Ct. 2992 (1993); Bower v. Bunker Hill Co., 114 F.R.D. 587 (E.D. Wash. 1986).

Rexam argues that the Sixth Circuit has concluded there is no right to a jury trial for claims brought under § 301 of the LMRA and ERISA.  See Golden v. Kelsey-Hayes Co., 73 F.3d 648, 662-63 (6th Cir. 1996).  Rexam suggests the Eighth Circuit adopted this conclusion in Entergy Arkansas Inc. v. Nebraska, when it quoted Golden for the proposition that monetary damages awarded for losses not fully cured by equitable relief can be considered equitable in nature.  358 F.3d 528, 546 (8th Cir. 2004).  The Court concurs with Judge Boylan's rationale in distinguishing both Entergy and Golden from the instant action.

---

[6]  It is well-established that only equitable relief is available under ERISA.  See In re Vorpahl, 695 F.2d 318, 322 (8th Cir. 1982); Great-West, 534 U.S. at 209-210.

[7]  The same is also true for another case relied upon by Rexam, Brown v. Aventis Pharmaceuticals, Inc., 341 F.3d 822 (8th Cir. 2003).

Entergy involved "a dispute growing out of an interstate compact, sanctioned by the Constitution and Congress, and entered into by five sovereign states." Id. Unlike the breach of contract claim at issue in the current case, the Eighth Circuit found the dispute at issue in Entergy was unlike anything tried to a jury in the Eighteenth Century. Id. at 546-47. Furthermore, the Eighth Circuit found that the monetary award Entergy received was equitable in nature because it was awarded when the requested injunctive relief was no longer practical. Id. In the instant matter, USWA requests monetary damages as remedy for Rexam's alleged breach.[8]

Finally, Golden itself is distinguishable from the present case. In Golden, monetary remedies were requested to fully compensate the retirees for their equitable losses. See Golden, 73 F.3d at 663. Here, monetary damages are requested to compensate for losses sustained by Rexam's alleged contractual breach.

For the aforementioned reasons, USWA is entitled to a jury trial under the LMRA on its counterclaims.[9]

**ii.     ERISA Preemption of Right to Jury Trial under LMRA**

Rexam also argues USWA can not claim the right to a jury trial under the LMRA because legal remedies are preempted by ERISA. Rexam contends the USWA's LMRA claim is

---

[8]  Additionally, Entergy's acceptance of Golden's holding is questionable. As Judge Boylan wrote, "[b]ased solely on a citation of a case for a basic proposition, the court declines to accept that the Eighth Circuit has fully embraced the reasoning set forth in Golden." Aug. 10, 2005 Order at 7.

[9]  In a September 20, 2005 Order [Docket No. 199], this Court granted Rexam and USWA the right to file supplemental briefing on this issue. The Court has considered the supplemental briefing [Docket Nos. 178, 200] and found it does not alter the resolution of this matter.

based on the same facts and documents as their ERISA claim.  The exclusive remedies provided

under ERISA are equitable.  Great-West, 534 U.S. at 209-10.  As Rexam argues, § 301 of the

LMRA "does not abrogate that exclusivity and with no legal remedy available, there is no jury

trial right."  Rexam's Appeal Brief at 10.  To hold otherwise, Rexam claims, would create the

anomalous situation where former union members could demand a jury trial on a claim for

health and welfare benefits under an ERISA plan while non-union retirees could not.

Although ERISA wholly preempts state law relating to employee benefit plans, the

statute's "savings clause" explicitly states it does not affect separate and preexisting federal

causes of action:

> Alteration, amendment, modification, invalidation, impairment, or supersedure of any
> law of the United States prohibited
>
> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair,
> or supersede any law of the United States . . . or any rule or regulation issued under any
> such law.

ERISA § 514(d), 29 U.S.C. § 1144(d); see also 29 U.S.C. § 1114; Pilot Life Ins. Co. v. Dedeaux,

481 U.S. 41 (1987) (finding ERISA wholly preempts state law relating to employee benefit

plans).  Courts have repeatedly held that § 502 of ERISA was designed to supplement rather than

supersede the rights existing under § 301 of the LMRA.  See, e.g., Bugher v. Feightner, 722 F.2d

1356, 1358-60 (7th Cir. 1983), cert. denied, 469 U.S. 822 (1984); Golden v. Kelsey-Hayes Co.,

73 F.3d 648, 659 n. 11 (6th Cir. 1996); see also Murphy v. Heppenstall Co., 635 F.2d 233, 237

(3d. Cir. 1980).[10]

---

[10]  The cases cited by Rexam in its brief hold that "extra-contractual" damages, such as
emotional distress, are not permitted under the LMRA.  See Zielinski v. Pabst Brewing Co., Inc.,
360 F. Supp.2d 908, 925 (E.D. Wis.); United Steelworkers of America, AFL-CIO-CLC v.

The alleged anomaly created by granting union members and retirees the right to a jury trial on claims concerning health and welfare benefits, without providing a similar right to non-union employees was envisioned by Congress. "ERISA is the result of a decade of Congressional study, and its remedies are both comprehensive and specific." Rexam's Appeal Brief at 10 citing Great-West, 534 U.S. at 209; Zielinski, 306 F. Supp.2d at 923-24. Congress granted rights to union workers under the LMRA not available to non-union workers. Congress chose not to revoke these rights when crafting ERISA. Instead, it included a savings clause explicitly stating ERISA does not preempt federal laws such as the LMRA.

For the aforementioned reasons, USWA is entitled to a jury trial on its counterclaims under the LMRA. Although a jury trial is not available under ERISA, "if a legal claim is joined with an equitable claim, the right to [a] jury trial on the legal claim, including all issues common to both claims, remains intact." Tull, 481 U.S. at 425. Therefore, USWA's LMRA issues may be tried to a jury, followed by a court determination of the equitable ERISA issues. See Brown v. Sandimo Materials, 250 F.3d 120, 128-29 (2nd Cir. 2001); Stewart, 75 F.3d 1522, 1528 (11th Cir. 1996). Furthermore, Federal Rules of Civil Procedure 39(c) permit the court to use an advisory jury to assist the court in resolving factual matters even when the underlying claim is equitable. See Firemen's Ins. Co. of Newark, N.J. v. Smith, 180 F.2d 371, 374 (8th Cir. 1950). If the Court finds, as the case progresses, that USWA's requested relief under the LMRA is not legal in nature, the matter can still be submitted to the jury in an advisory capacity.

---

Connors Steel Co., 855 F.2d 1499, 1510 (11th Cir. 1988); Ragan v. Navistar Int'l Transportation Corp., 1989 U.S. Dist. LEXIS 11749, at *4 (D. Kan. Sept. 20, 1989). Because USWA is seeking economic damages that flow directly from the alleged breach of the labor agreement, rather than extra-contractual damages, such as emotional distress damages, these cases are inapposite.

20

Consequently, Rexam's appeal of the August 10, 2005 Order is denied.

**2.      IAM's Appeal**

IAM argues the August 10, 2005 Order erroneously denied its Motion for Order to Direct

Jury Trial because the analysis was based on its counterclaim to compel arbitration.  IAM argues

it specifically disavowed any request for a jury trial based on its counterclaim.  Instead, IAM

requests that the claims asserted against it in Rexam's Complaint be tried to a jury.  In support of

its jury demand, IAM argues: "(1) the jury demand of the [USWA] is broad enough under Fed.

R. Civ. P. 38 to cover demand for the issues pertaining to the right to lifetime benefits under

plans for the IAM and, alternatively, (2) the [court has] authority under Fed. R. Civ. P. 39(b) to

order a trial by jury even if the party has failed to make a jury demand in a timely manner."

Aug. 10, 2005 Order at 9.

As the Order correctly notes, under both Rule 38 and Rule 39, the party must first

demonstrate that a right to a jury trial has been preserved by the Seventh Amendment.  Fed. R.

Civ. P. 38, 39; see also Johnson v. Fidelity & Cas. Co., 238 F.2d 322, 324 (8th Cir. 1956);

Freeborn v. Mak, 270 F. Supp.2d 1064, 1066-67 (S.D. Iowa 2003).  Thus, IAM must show that

the claims asserted against IAM in Rexam's Complaint satisfy the two prong test set forth above.

Rexam requests (1) a declaratory judgment under ERISA and § 301 of the LMRA of its

rights to amend the health and welfare benefits of retirees and (2) a permanent injunction

prohibiting members of the class from instituting any action against Rexam, its employees,

agents or subsidiaries, with respect to the subject matter of the instant action.  Am. Compl. at 18.

As previously discussed, a claim under § 301 of the LMRA that an employer has violated a

collective bargaining agreement "is comparable to a breach of contract claim – a legal issue." Terry, 494 U.S. at 570.[11]

Having satisfied the first prong of the test, IAM must show that the nature of the relief requested by Rexam is legal rather than equitable in nature.  As previously discussed, declaratory relief is neither inherently equitable nor legal in nature.  Northgate Homes, 126 F.3d at 1099.  Therefore, the right to a jury trial depends upon whether there would have been a right to a jury trial if the issue had arisen in an action other than one for a declaratory judgment.  Id. Rexam has only requested declaratory and injunctive relief.  It does not seek monetary relief or raise claims that naturally encompass monetary relief that might be considered legal in nature.

IAM argues the instant case is similar to Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959).  In Beacon Theatres, the Supreme Court found the defendant should have been allowed a jury trial where plaintiff sought both a declaration that it was not in violation of the antitrust laws and an injunction preventing antitrust actions against it.  Id. at 502-03, 506, 508. However, in Beacon Theatres, there was a counterclaim for treble damages.  Id. at 503.  In the instant action, IAM only counterclaims for a declaration that Rexam breached the CBA by failing to resolve disputes regarding the modification of benefits in mandatory arbitration.  This is quintessential equitable relief.  Because IAM cannot satisfy the second and more important part of the two prong test, there is no right to a jury trial.

Consequently, IAM's request for a jury trial is denied because it cannot satisfy the prerequisite to Rules 38 and 39 - demonstrating that a right to a jury trial has been preserved

---

[11]  IAM does not contest that only equitable relief is available under ERISA.

22

under the Seventh Amendment.[12]  However, under the authority provided by Rule 39(c), the

Court retains its discretion to submit all factual issues with respect to the claims Rexam asserts

against IAM and IAM's counterclaim to a jury in an advisory capacity.[13]

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY

ORDERED that:

1.  Plaintiff's Motion to Reconsider [Docket No. 156] is **GRANTED** as to the

Whitehouse Plant Subclass and the Valparaiso Plant Subclass and **DENIED** as to the ACC

USWA and ANC USWA (Former ACC Plants) Subclass and the USWA Managed Care Election

Subclass;

2.  Plaintiff's Request to Reconsider Defendant Class Certification [Docket No. 159] is

**DENIED**;

---

[12]  The Court also notes the IAM relies on USWA's right to a jury trial and argues it should be allowed to piggyback on USWA's jury demand.  See California Scents v. Surco Products, Inc., 406 F.3d 1102, 1107-08 (9th Cir. 2005); Rosen v. Dick, 629 F.2d 82, 91-92 (2nd Cir. 1980).  To do so, IAM must show the claims against it arise from the same matrix of facts and issues on which the USWA demanded a jury trial.  California Scents, 406 F.3d at 1109.  Judge Boylan correctly found, based in part on IAM's representations in its class certification motion, that the "factual distinctions between the multiple plans and collective bargaining agreements and the possible necessity of having to review extrinsic evidence for some of those plans or agreements, precludes this court from treating the multiple defendants as one defendant class."  Aug. 10, 2005 Order at 10.  Therefore, Judge Boylan's Order concludes the claims do not arise from the same factual matrix on which the USWA demanded a jury trial.  This determination is in keeping with this Court's independent analysis that IAM and USWA's claims are factually distinct.

[13]  The Magistrate Judge found IAM's counterclaim should be submitted to an advisory jury.  Aug. 10, 2005 Order at 10-11.  IAM does not contest this holding and the Court finds no reason to disturb it.

3.   Plaintiff's Motion to Show Cause Why Defendants Should Not be Held in Contempt of Court [Docket No. 172] is **DENIED**;

4.   Plaintiff's Objections to and Appeal from the Magistrate Judge's August 10, 2005 Order Denying Plaintiff's motion to Strike the USWA Defendants' Jury Trial Demand [Docket No. 162] is **DENIED**;

5.   Defendant IAM's Objection to Magistrate's Order on Motion for a Jury Trial [Docket No. 167] is **DENIED**; and

6.   Judge Boylan's August 10, 2005 Order [Docket No. 157] is **AFFIRMED**.


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 22, 2005.

24