TIMOTHY E. BRANSON
(612) 343-7920
FAX (612) 340-8856
branson.tim@dorsey.com

April 21, 2006

The Honorable Ann D. Montgomery
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Rexam, Inc. v. United Steelworkers of America etc.,* No. 03-CV-2998-ADM/AJB

Dear Judge Montgomery:

I write today on behalf of Rexam to seek leave to move for reconsideration of that portion of the Court's Order denying Rexam's Motion for Summary Judgment with respect to the NCC USWA Subclass.  Rexam recognizes that "'[m]otions for reconsideration serve a limited function:  to correct manifest errors of law or fact . . ..'"  *Hagerman v. Yukon Energy Company,* 839 F.2d 407, 414 (8th Cir. 1988) (internal citation omitted).  With respect, Rexam believes that the Court's ruling regarding the NCC Subclass reflects manifest error, which can and should be corrected at this time because the Court's ruling is based upon contract language that does not apply to the Subclass members.  And, because the NCC Subclass has over 500 members, summary judgment against that Subclass would materially advance this litigation and would significantly simplify any trial.

In certifying the subclasses, the Court found that "different determinations [will have to made] as to whether the welfare benefits of retirees and their surviving spouses have vested."  February 2, 2005 Order, p. 9.  The separate determination that the Court made as to the NCC Subclass is manifest error because it is based on contract language that does not pertain to any member of the NCC Subclass, and that cannot reasonably be read as vesting retiree benefits for members of the NCC Subclass.  The Court's Order states, in part, that:

> A review of CBAs and plan documents for former NCC employees reveals "lifetime"[1] language that is not as strong as that found in ACC agreements. . . . "The **surviving spouse** of an **active employee** who is eligible to receive the **preretirement joint and survivor benefit** will be covered as a dependent for his or her lifetime under the Retired Employees Group Insurance Plan."  Other than that clause, USWA relies on the extrinsic evidence of other union/company documents and deposition testimony for the proposition that benefits vested.

February 21, 2006 Order, p. 21 (emphasis added, internal record citation omitted).

The fundamental problem with reliance on the quoted language is that the NCC Subclass does not include surviving spouses of active employees.  Although extrinsic evidence can be admitted to demonstrate that ambiguity exists, *John Morrell & Co. v. Local Union 304A of the*

---

[1] There are no "ceases upon death" or "benefits for life" clauses that pertain to the NCC Subclass.

*United Food and Commercial Workers, AFL-CIO*, 913 F. 2d 544, 551 (8th Cir. 1990), extrinsic evidence alone cannot create a vested retiree welfare benefit.  Instead, extrinsic evidence is used to "decide whether the contractual language is reasonably susceptible of the meaning proposed by the party asserting the ambiguity."  *Id.*  But the contract language relied upon by the Court, which addresses only the **surviving spouses** of **active** employees eligible for the pre-retirement joint and survivor benefit -- a category of beneficiaries not involved in this case -- cannot reasonably be read to vest retiree benefits for members of the NCC Subclass.

The Court's own assessment of the remaining evidence as it pertains to the NCC Subclass confirms that summary judgment should have been entered against that Subclass:

**Express Vesting Language** – "[T]he lack of express vesting language is evidence of an intent not to vest benefits . . ."  February 21, 2006 Order at 20.
**Duration Clause** -  "[T]he duration clause is but one clause that evidences an intent not to vest benefits, and it must be considered in . . . the totality of the relevant documents."  *Id.* at 23.
**Coordination Clause** – "At this stage of the analysis, it is sufficient to state that coordination clauses have generally been found to be evidence of an intent not to vest benefits."  *Id.* at 24.
**Reservation of Rights Clause** – "Plan documents between NCC and USWA never included a RR clause.  Plan documents from 1960 to 1987 instead had Termination of Insurance and Conversion Privilege clauses * * * [that] do not support an intent that benefits were vested . . ."  *Id.* at 27, 29.

With respect to the continuation clause, the Court did say that "[w]hile recognizing that continuation clauses have previously been found to be evidence that benefits are not vested, the continuation clauses in this case are arguably susceptible of the opposite interpretation."  *Id.* at 25.  However, as the Court also noted, "the CBAs between NCC and USWA did not include continuation clauses until1977."  *Id.*  Thus, a continuation clause could not support denial of summary judgment against the NCC Subclass as a whole.  More importantly, the NCC continuation clause beginning in 1977 is indistinguishable from the continuation clauses in the IAM contracts that the Court described as "slight evidence of intent that the benefits are **not vested**."  *Id.* at 14 (emphasis added).

Ultimately, even if the continuation clause is viewed as "arguably susceptible" of an interpretation in favor of the NCC Subclass, rather than as "slight evidence" in favor of Rexam, that clause is not the kind of significant probative evidence required to avoid summary judgment.  *See Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1091 (8th Cir. 1992).  And the extrinsic evidence mentioned by the Court cannot make any of the other relevant clauses, or the plans and CBA's as a whole, reasonably susceptible (as is required) to an interpretation that retiree medical benefits for the NCC Subclass are vested.

For the above reasons, Rexam respectfully requests leave to move for reconsideration of the part of the Court's February 21, 2006 Order denying Rexam's motion for summary judgment against the NCC Subclass.  Thank you for your consideration of this request.

                                                  Very truly yours,

                                                  s/ Timothy E. Branson

cc:   all counsel of record                      Timothy E. Branson